## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

|  |  |
|---|---|
| EATON CORPORATION | CASE NO. 1:25-cv-103-RLY-TAB |
| Plaintiff, | |
| v. | |
| BREAKERS UNLIMITED INC., BAY POWER INC., ANY BREAKERS LLC, CONSOLIDATED PARTS INC. d/b/a ALL INDUSTRIAL ELECTRIC SUPPLY INC., OTC ENTERPRISES LLC d/b/a ABSOLUTE ELECTRIC SUPPLY, SILICON VALLEY BREAKER AND CONTROL INC., JESUS GARCIA, JOHN DOES 1-10, and XYZ CORP. 1-10. | |
| Defendants. | |

## PLAINTIFF'S MOTION FOR LEAVE TO AMEND ITS COMPLAINT

## I.    INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 15(a)(2) and Local Rule 15-1, Plaintiff Eaton Corporation respectfully requests leave to amend its Complaint to include additional defendants South Florida Electrical Sales, LLC d/b/a Industrial Corp ("Industrial Corp.") and Global Breakers, Inc., ("Global Breakers") and additional facts in support of Eaton's conspiracy claims. The party and factual amendments are all newly discovered and timely sought to be added by this amendment. A copy of the proposed Verified Amended Complaint is attached as **Exhibit A**.

For the reasons that follow, Eaton requests leave to amend. Though certain Defendants have refused to consent to the amendment, none will offer a valid reason why Eaton should not be permitted to pursue its claims against parties who have been identified as sources of the counterfeit goods in the possession of certain Defendants in this matter, nor have Defendants provided a valid reason that adding additional factual allegations (of which Defendants are already aware) to further support Eaton's conspiracy   claims  is prejudicial. Justice requires that these new defendants be added to the case, and the Court "should freely give leave." Fed. R. Civ. P. 15(a)(2).

## II.    PROCEDURAL HISTORY

Eaton filed its Complaint on January 16, 2025. At the same time, Eaton moved for a temporary restraining order, seizure order, and expedited discovery. The Court granted Eaton's motions in part [ECF 46], and since then the parties have engaged in expedited written discovery, document production, and inspections.

This expedited discovery  identified some of parties who provided the counterfeit goods in question to Defendants. As these suppliers provided the counterfeit goods at issue, they are also liable for the sale of counterfeit goods, and naturally part of the facts and circumstances of this case. Accordingly, Eaton wishes to add these parties as Defendants.

In addition, Breakers Unlimited recently filed a motion challenging Eaton's conspiracy count. [ECF Nos. 167, 168.] Because Eaton has learned additional facts—including that Global Breakers, Inc., one of the parties Eaton seeks leave to add to this litigation, is a potential supplier of Eaton products for other Defendants in addition to Breakers Unlimited, with investigation still ongoing—supporting its conspiracy count, and because Eaton has to amend its Complaint anyway to add the parties mentioned above, Eaton respectfully requests leave to amend the Complaint to include additional facts in support of its conspiracy claims.

On April 25, 2025, Eaton sent a copy of the proposed Amended Complaint to Defendants' counsel via email and sought Defendants' consent. Counsel for SVBC and Bay Power have not yet responded. Counsel for Defendants Any Breakers, LLC Consolidated Parts, Inc., OTC Enterprises, LLC, and Breakers Unlimited, Inc. did not consent to Eaton's request. And counsel for one or more of the Defendants asked whether Eaton would withdraw its request for a preliminary injunction in exchange for consent to leave to amend, claiming that adding the additional parties would increase the discovery burdens on the currently-named Defendants, as they would now need to account for two additional defendants and a shifting theory of liability. *See* **Exhibit B** (May 2, 2025 Communication between parties re: amendment.) Eaton does not intend to drop its request for a preliminary injunction, and the adding of new defendants to this case has no bearing on the *current* Defendants' discovery obligations.

## III.    LEGAL STANDARD

Denials of leave to amend "are disfavored." *Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010). And a district court's decision to deny a plaintiff at least one opportunity to amend "will be reviewed rigorously on appeal." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015). Even after a motion to dismiss has been

granted (and no defendant has even filed such a motion here), leave to amend should be granted "[u]nless it is *certain* from the face of the complaint that any amendment would be futile or otherwise unwarranted." *Id.* at 519–20 (emphasis in original). "District courts should not deny leave absent a 'good reason'—such as futility, undue delay, prejudice, or bad faith." *Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 417 (7th Cir. 2019).

## IV.    ARGUMENT

Here, there is no reason to deny amendment, let alone any "good reason" as required by the Seventh Circuit.

### A.    Eaton Acted Swiftly and in Good Faith to Amend Its Complaint.

Expedited discovery in this case is ongoing. Eaton recently completed inspections of each of the Defendants' facilities. Document production from Defendants is ongoing and, since document production remains incomplete, no depositions have been taken yet. Indeed, given the nature of the ongoing discovery with each party, it is likely that *additional* parties will need to be added in the coming weeks, as evidence of each of Defendants' suppliers of counterfeit goods is produced. Nevertheless, at this time Eaton has sufficient information to add Industrial Corp. and Global Breakers as defendants, and it is imperative they are added at this time to prevent continued wrongful conduct and enable discovery regarding the same. Breakers Unlimited has made unequivocal representations, and provided some supporting documentation, that these two companies supplied Breakers Unlimited with counterfeit Eaton breakers. Given the ongoing nature and early stage of discovery, Eaton's motion to add these parties is timely and appropriate. Eaton's amendments relating to its conspiracy counts is also appropriate for the same reasons, and in view of the need to add parties. *See, e.g., Shepherd v. ASI, Ltd.*, 2012 WL 13136047, at *1 (S.D.Ind., December 18, 2012) (holding no undue delay when a plaintiff filed his amended complaint 4

months after the pleading deadline where he was diligently engaging in the discovery that revealed the need for amendment.)

**B.     There are No Repeated Failures to Cure Deficiencies by Eaton.**

This factor typically comes into play when the plaintiff requests leave to amend a complaint to avoid or moot dismissal under a Rule 12 motion after having multiple attempts to cure the error. That is not the case here, as this is Eaton's first amendment of its Complaint—which is done in part to add new relevant parties, not simply to cure alleged pleading deficiencies—and is Eaton's first opportunity to address the alleged deficiencies raised in Breakers Unlimited's Motion for Judgment on the Pleadings relating to Eaton's conspiracy claim as applied to them.

**C.     There is No Undue Prejudice to Defendants.**

There is no prejudice—let alone *undue* prejudice—that would result from amendment. Eaton has not, at this time, received discovery connecting Industrial Corp. and Global Breakers to any Defendant other than Breakers Unlimited[1], so adding these two parties should not impact the other Defendants. Of course, if ongoing discovery does demonstrate a connection between other Defendants and Industrial Corp. and Global Breakers, having those parties in the case would allow Defendants to assert crossclaims. Discovery is in its early stages and there is ample time to propound additional discovery and further develop any necessary facts associated with Industrial Corp. and Global Breakers independently of the existing Defendants. The amendment merely allows Eaton to ensure the proper parties are named and liable for their actions. Further, adding the additional parties has no impact on the preliminary injunction hearing that the current Parties are preparing for. While certain Defendants have suggested that Eaton should withdraw its request for a preliminary injunction because of its request to add these new defendants, that suggestion

---

[1] Eaton has only recently received documents indicated that Global Breakers, one of the newly added defendants, was also a supplier to Bay Power. Further investigation is currently underway to determine if it is the same entity.

makes little sense. Discovery and other proceedings relating to the two new defendants can happen on their own schedule independent of the discovery schedule among the current defendants.

### D.    The Requested Amendment is Not Futile.

The amendments in the Complaint set out the basis for Eaton's inclusion of Industrial Corp. and Global Breakers, giving Defendants' ample and fair notice of Eaton's claims and grounds upon which they rest. Moreover, justice will best be served by allowing Eaton to pursue its claims and seek relief from two additional responsible entities, as well as by allowing Breakers Unlimited (or any other current defendant) to file cross-claims. For this additional reason, the amendment is not futile and this factor supports granting Eaton leave to amend its Complaint. *Morales v. Copestone Gen. Contractors*, 2024 WL 492396, * 4 (W. D. Tex. Feb. 8, 2024) (holding that the futility factor supported amendment because adding other defendants and allowing plaintiff to pursue claims against all potential defendants "would be in the interest of justice").

## V.    CONCLUSION

Eaton's request easily satisfies the liberal standard for pleading amendments. Eaton therefore respectfully requests that the Court grant leave to amend its Complaint.

Dated: May 16, 2025

By:    */s/ Cameron Nelson*_____

Riley H. Floyd
HOOVER HULL TURNER LLP
111 Monument Circle, Suite 4400
Indianapolis, IN 46204
Telephone: (317) 381-5615
Email: rfloyd@hooverhullturner.com

Cameron M. Nelson
*Pro Hac Vice*
Jacqueline V. Brousseau
*Pro Hac Vice*

6

Katherine M. Cronin
*Pro Hac Vice*
Blake H. Altman
GREENBERG TRAURIG, LLP
360 N. Green St., Suite 1300
Chicago, IL 60607
Telephone: (312) 456-8400
nelsonC@gtlaw.com
cronink@gtlaw.com
jacqueline.brousseau@gtlaw.com
blake.altman@gtlaw.com

*Attorneys for Plaintiff Eaton Corporation*

7

# Exhibit A

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| EATON CORPORATION | CASE NO. 1:25-cv-103-JPH-TAB |
| Plaintiff, | |
| v. | |
| BREAKERS UNLIMITED INC., BAY POWER INC., ANY BREAKERS LLC, CONSOLIDATED PARTS INC. d/b/a ALL INDUSTRIAL ELECTRIC SUPPLY, OTC ENTERPRISES LLC d/b/a ABSOLUTE ELECTRIC SUPPLY, SILICON VALLEY BREAKER AND CONTROL INC., SOUTH FLORIDA ELECTRICAL SALES, LLC d/b/a INDUSTRIAL CORP, GLOBAL BREAKERS, INC. JESUS GARCIA, JOHN DOES 1-10, and XYZ CORP. 1-10. | **FILED *EX PARTE AND* UNDER SEAL PURSUANT TO 15 U.S.C. § 1116(d)** |
| Defendants. | |

## <u>VERIFIED AMENDED COMPLAINT</u>

Plaintiff Eaton Corporation ("Eaton" or "Plaintiff") by and through its undersigned attorneys, hereby file this Complaint against Defendants Breakers Unlimited Inc. ("Breakers Unlimited"), Bay Power Inc. ("Bay Power"), Any Breakers LLC ("Any Breakers"), Consolidated Parts Inc. d/b/a All Industrial Electric Supply ("All Industrial"), OTC Enterprises LLC d/b/a Absolute Electric Supply ("Absolute Electric"), Silicon Valley Breaker and Control Inc. ("SVBC"), South Florida Electrical Sales, LLC d/b/a Industrial Corp ("Industrial Corp"), Global Breakers, Inc., Jesus Garcia, John Does 1-10, and XYZ Corp. 1-10 (together, "Defendants") and alleges as follows:

## <u>NATURE OF ACTION</u>

1. Defendants are a network of sellers who are importing genuine IEC standard Eaton circuit breakers from and suitable only for the international market and then defacing, altering, and

1

relabeling these breakers so they could be passed off as *different* Eaton breakers fit for the domestic North American market as NEMA / UL / CSA standard breakers. The breakers bearing counterfeit labels sold by Defendants gut Eaton's careful manufacturing and quality control processes by presenting breakers to end users as *entirely different breakers* than the breaker originally manufactured by Eaton; these breakers deceive customers into believing the breakers sold by Defendants have properties they do not. As a result, Defendants' counterfeiting activities have not only caused Plaintiff lost sales, but also harmed, and continue to harm, Plaintiff's brand, goodwill, and reputation, as well as consumers. Through this action, Plaintiff seeks to enjoin Defendants from engaging in further marketing and sales of counterfeit products and to recover all monetary damages they have suffered.

2.      Plaintiff asserts the following causes of action: (i) counterfeiting and trademark infringement in violation of the Trademark Act of 1946, 15 U.S.C. §§ 1114(1) and 1116(d); (ii) the use of false designations of origin and false and misleading descriptions and representations in violation of the Trademark Act of 1946, 15 U.S.C. § 1125(a); (iii) unfair competition in violation of Indiana common law; (iv) unjust enrichment; and (v) conspiracy.

## THE PARTIES

3.      Eaton Corporation is an Ohio corporation, incorporated in 1916, with a principal place of business at 1000 Eaton Blvd Cleveland, Ohio, 44122. Eaton is the owner of the federally registered EATON® and Cutler-Hammer® trademarks (defined below), and variations thereof, for circuit breakers (the "Eaton Marks").

4.      Defendant Breakers Unlimited Inc. ("Breakers Unlimited") is an Indiana corporation with a principal place of business at 15210 North Pointe Blvd., Noblesville, Indiana 46060. Its officers are Joseph Wendel (Chairman), Gary Gutknecht (President), James Jacobi (Vice

2

President), and Jonathan Taylor (Treasurer and Secretary), all of whom reside in the Southern District of Indiana. Breakers Unlimited currently has 10 additional locations throughout the United States. Breakers Unlimited has sold and offered for sale within this District, and throughout the United States, counterfeit circuit breakers that infringe the Eaton Marks. Breakers Unlimited has previously been found guilty of selling counterfeit breakers, by jury verdict after trial on the merits in this District. On information and belief, Breakers Unlimited has purchased breakers bearing counterfeit labels from at least Any Breakers or its affiliates.

5.      Defendant South Florida Electrical Sales, LLC d/b/a Industrial Corp ("Industrial Corp") is a Florida limited liability company with principal places of business at 6601 Lyons Road, Suite E-3, Coconut Creek, Fl 33073 and 2701 NE 4th Ave., Bay #7, Pompano Beach, Fl 33064. The managing member is Eric Nabrzeski, who, upon information and belief, resides in the Southern District of Florida. Industrial Corp is a supplier to Breakers Unlimited and sold counterfeit circuit breakers to Breakers Unlimited in Indiana.

6.      Defendant Global Breakers, Inc ("Global Breakers") is a Canadian corporation with a principal place of business at 206 Saunders Road, Barrie, On, Canada, L4N 9A2. Upon information and belief, Global Breakers is controlled and operated by Alex Patton, an officer of Global Breakers but whose title is unknown, and who resides in Ontario, Canada. Global Breakers is a supplier to Breakers Unlimited and sold counterfeit circuit breakers to Breakers Unlimited in Indiana.

7.      Defendant Bay Power Inc. ("Bay Power") is a California corporation with principal places of business at 626 Kearney Ave. Modesto, California 95350 and 1095 N 7th St. San Jose, California 95112. Bay Power's officers are Tom Butcher (CEO), Donna Butcher (CFO), Tim May (Vice President) and Kym May (Secretary), who reside in the Northern and Eastern districts of

California. Bay Power has locations in San Jose, Modesto and Roseville in California, and in Fort Worth, Texas. Bay Power sells and offers for sale throughout the United States, including Indiana, counterfeit circuit breakers that infringe the Eaton Marks. On information and belief, Bay Power has purchased breakers bearing counterfeit labels from at least Any Breakers or its affiliates.

8.     Defendant Any Breakers LLC ("Any Breakers") is a Delaware limited liability company with a principal place of business at 845 Stanton Road, Burlingame, California 94010. The managing member of Any Breakers is Joe Ruiz, who resides in this District. Michael Feltsman currently holds himself out as the president of Any Breakers and resides in the Northern District of California. Mr. Feltsman is also the Chief Procurement Officer of a company called Electrical Source Holdings. On information and belief, Any Breakers is ultimately owned by Radwell International. Any Breakers sells and offers for sale throughout the United States, including Indiana, counterfeit circuit breakers that infringe the Eaton Marks. On information and belief, Any Breakers has sold or directed the sale of breakers bearing counterfeit labels to at least Bay Power, Breakers Unlimited and Silicon Valley Breaker and Control.

9.     Defendant Consolidated Parts, Inc. d/b/a All Industrial Electric Supply ("All Industrial") is a California corporation with a principal place of business at 895 Mitten Road, Burlingame, California 94010 – approximately two blocks from Any Breakers. The officers of All Industrial are Alex Vaysberg (CEO), Adam Bryan (CFO), Mr. Feltsman (Secretary) and Jeremy Wilson, who reside in the Northern District of California. All Industrial sells and offers for sale throughout the United States, including Indiana, counterfeit circuit breakers that infringe the Eaton Marks. On information and belief, All Industrial works with and at the direction of Any Breakers to sell and distribute breakers bearing counterfeit labels.

10.    Defendant OTC Enterprises LLC, d/b/a Absolute Electric Supply ("Absolute Electric") is a California LLC with principal places of business at 611 Lockhaven Drive, Houston, Texas, 77073. Mr. Vaysberg is a manager or member Absolute Electric. Absolute Electric also registered the assumed names of "Absolute Electrical Supply," "Livewire Electrical Supply" and "AMS Enterprises" in Texas. The State of Texas forfeited Absolute Electric's registration on February 23, 2024, though Mr. Feltsman submitted a new report to the State of Texas on September 12, 2024, listing 895 Mitten Road, Burlingame, CA as the principal place of business, which is the same principal place of business as Defendant All Industrial. Absolute Electric sells and offers for sale throughout the United States, including Indiana, counterfeit circuit breakers that infringe the Eaton Marks. On information and belief, OTC Enterprises works with and at the direction of Any Breakers to sell and distribute breakers bearing counterfeit labels.

11.    On information and belief, Defendants Any Breakers, All Industrial and Absolute Electric are just three of several entities created by Alex Vaysberg and Mike Feltsman for the purpose of distributing breakers bearing counterfeit marks. On further information and belief, Any Breakers, All Industrial and Absolute Electric were created to shield Alex Vaysberg, Mike Felstman and other investors, officers and owners from potential liability, and to distribute potential liability among several different entities.

12.    Defendant Silicon Valley Breaker and Control Inc. ("SVBC") is a California corporation with a principal place of business at 2128 North 1st Street, San Jose, California 95112. Jesus Garcia is the CEO, secretary and CFO of SVBC and, on information and belief, he resides in the Northern District of California. SVBC has sold and offered for sale throughout the United States, including Indiana, counterfeit circuit breakers that infringe the Eaton Marks.

13.     Jesus Garcia has personally and knowingly directed the purchase, distribution and sale of counterfeit breakers and breakers bearing counterfeit labels, in conjunction and coordination with other Defendants.

14.     John Does 1-10 are individuals who have personally and knowingly directed the purchase, distribution and sale of breakers bearing counterfeit labels, in conjunction and coordination with other Defendants.

15.     XYZ Corps. 1-10 are entities which have knowingly directed the purchase, distribution and sale of breakers bearing counterfeit labels, in conjunction and coordination with other Defendants.

## JURISDICTION AND VENUE

16.     The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1338(a) and (b), because the claims address federal questions concerning the Lanham Act, 15 U.S.C. § 1121, trademark infringement of federally registered trademarks pursuant to 15 U.S.C. § 1114, and federal unfair competition pursuant to 15 U.S.C. § 1125(a).

17.     The Court has supplemental jurisdiction over the claims arising under the laws of the State of Indiana, pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal subject-matter claims that they form part of the same case or controversy and derive from a common nucleus of operative fact.

18.     This Court has personal jurisdiction over the Defendants because, *inter alia*, they (i) they are residents of, or do business in, the State of Indiana and this District; (ii) committed tortious actions within, and directed to, this State; (iii) purposefully directed improper and unlawful activity at this State by distributing, marketing, and/or selling counterfeiting product in the State; and/or (iv) caused injury to Plaintiff in this State. Further, Indiana is a key nexus of Defendants'

conspiracy. Defendant Breakers Unlimited Inc. is an Indiana corporation, and it has played a central role in the distribution of counterfeit circuit breakers, including purchasing circuit breakers from the other Defendants. Further, as set forth herein, the counterfeit circuit breakers bear common indicia of counterfeiting, demonstrating that the breakers originate from a common source, which is either one of the Defendants, or a source each of the Defendants share, and the Defendants are engaged in a wide-ranging conspiracy to distribute these counterfeit circuit breakers. Still further, each of the Defendants has distributed purported Eaton circuit breakers to at least one of the other Defendants. On information and belief, this includes counterfeit circuit breakers.

19.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claims occurred and are occurring in this District through the sale of counterfeit circuit breakers in this District and through the acts of Defendant Breakers Unlimited.

## FACTUAL ALLEGATIONS TO ALL CLAIMS

### Plaintiff's Products and Relevant Intellectual Property

20.     Eaton has been in business since the early 1900s and is well-known in the industry as the gold standard for electrical products. Relevant to this case, Eaton is the well-respected producer of electrical circuit breakers. Eaton products are manufactured in accordance with strict quality control standards, which have allowed Eaton to establish and maintain, over many years, a reputation among electricity professionals for quality and standardization. Further, Eaton's circuit breakers are manufactured to industry standards, including NEMA, UL, CSA and IEC standards, which ensure the breakers perform as designed and as expected by the end user. This includes obtaining third-party analysis and certification of Eaton breakers.

21. Consumers and the public recognize the Eaton brand and trademarks as indicators of source for circuit breakers which meet Eaton's strict quality standards. Consumers and the public also recognize the third party certifications that genuine Eaton breakers bear as further evidence of quality and reliability.

22. Eaton has invested significant time, effort, and money in advertising and promoting circuit breakers under the Eaton Mark and to combating counterfeit products.

23. Eaton is the sole and rightful owner of the EATON® trademarks (the "Eaton Marks"), many of which are registered with the United States Patent and Trademark Office ("USPTO"), including the following marks:

| Mark / Reg. No. | Reg. Date / First Use Date | Relevant Goods |
|---|---|---|
| EATON RN: 2893267 | Oct. 12, 2004 Jun. 20, 1972 | Class 9: electrical control apparatus, electrical machines, and electrical supplies, namely; controllers for dynamo-electric machines; starting, stopping, reversing, and speed regulating apparatus for motors; voltage and current regulating apparatus for generators and converters, and like control apparatus for rotary converters; electrical panelboards and switchboards;…safety switches; disconnect switches;…insulating bases and supports for switches and the like;…fuse panels; terminal plugs; wiring fixtures and conduit fittings consisting of switches; switch boxes and covers, attachment plugs, taps, receptacles, lamp sockets, and cord connectors; switch panels; control panels; load centers; meter centers; panel boards; switch boards; pump control panels; electrical switchgear;…circuit controllers for electric refrigerators, and protective apparatus, namely, overload circuit breakers, panels, and enclosures therefor and parts thereof;…voltage controls;…ac motor drive apparatus and controls; multiple motor drive apparatus and controls;…power supply controls;…fuse blocks;…manually, mechanically and motor operated |

| | | switches;…control centers; electrical power distribution centers; electrical busways; bus ducts;…electromechanical actuators;…electrical protection and coordination apparatus; surge suppressors; motor protectors; intra-device communicators for circuit interrupters and contactors; voltage, current and power electrical metering units;…medium and low voltage electrical switchgear;…microprocessor controlled, electronic and mechanical circuit breakers, trip units; …protective relays… |
|---|---|---|
| <br>RN: 4795853 | Aug. 18, 2015<br>Sep. 15, 2014 | Class 9: circuit and surge protection devices, residual current circuit breakers, residual current breaker with overload protection, miniature circuit breakers, molded case circuit breakers, electrical switches, surge protection devices |
| Powering Business Worldwide<br>RN: 3904707 | Jan. 11, 2011<br>Apr. 1, 2009 | Class 9: Circuit breakers, loadcenters for circuit breakers, circuit breaker panelboards, low and medium voltage switchgear, circuit interrupters, namely, circuit breakers, circuit cut-out switches, electric switches, structured wiring systems comprised of electric cables, electric outlets, and electric wires, voltage surge protectors, electric control panels, electronic sensors for sensing electric current, temperature, and moisture, electric control devices for heating and energy management, electrical distribution boxes for regulating amounts of electricity, computer software for monitoring and controlling electrical power, uninterruptible power supply devices, electric power suppression units, computer software for servicing and maintaining uninterruptible power supply devices, electrical connectors |
| Series C<br>RN: 3237236 | May 1, 2007<br>Feb. 13, 1984 | Class 9: Electrical circuit breakers |
| Series G<br>RN: 2953048 | May 17, 2005<br>May 21, 2004 | Class 9: Circuit Breakers |
| CH<br><br>RN: 2067544 | Jun. 3, 1997<br>Dec. 1, 1994 | Class 9: Electrical control apparatus, electrical machines, and electrical supplies, namely controllers for dynamo-electric machines; starting, stopping, reversing, and speed regulating apparatus for motors, and voltage and current regulating apparatus for generators, and like control apparatus for rotary converters; current |

9

| | | breakers; electrical panelboards and multi-breakers;…insulating bases and supports for switches and the like;…fuse panels; terminal lugs; wiring fixtures and conduit fittings consisting of switches, switch boxes and covers, attachment plugs, taps, receptacles, lamp sockets, and cord connectors;…switch panels; control panels;…electric entrance and branch service equipment, namely circuit breakers, panels, and enclosures therefor, and parts thereof; busways; |
|---|---|---|
| Cutler-Hammer RN: 545127 | Jul. 17, 1951 Aug. 12, 1893 | Class 9: Electrical control apparatus, electrical machines, and electrical supplies, consisting of…voltage and current regulating apparatus for generators, and like control apparatus for rotary converters; current breakers;...electrical panelboards and multi-breakers;…insulating bases and supports for switches and the like;…fuse panels; terminal lugs; wiring fixtures and conduit fittings comprising switches, switch boxes and covers, attachment plugs, taps, receptacles, [ lamp sockets, ] and cord connectors;…contactors; switch panels; control panels;… |
| QUICKLAG RN: 411795 | Feb. 06, 1945 Oct. 1940 | Class 9: electric circuit breakers |

24.     The above trademark registrations are valid, subsisting, and incontestable.

25.     Eaton distributes its circuit breakers through an authorized network of distributors and retailers throughout the United States. These authorized resellers then distribute Eaton's products to electrical contractors for installation. Eaton provides a warranty for its breakers when the breakers are sold through an authorized Eaton reseller. In addition to electrical contractors Eaton, or Eaton distributors, may also sell circuit breaker products to original equipment manufacturers of electrical equipment for use in larger electrical assemblies. Eaton also provides a warranty for products sold to an authorized original equipment manufacturer ("OEM").

26.     Eaton distributes and sells its circuit breakers directly to authorized resellers throughout the United States who then distribute Eaton's products to contractors for installation.

Eaton provides a warranty for its breakers when the breakers are sold through an authorized Eaton reseller.

27.    Each Eaton branded product displays at least one Eaton Mark and, in most cases, display several Eaton Marks. Further, Eaton circuit breakers are commonly shipped in cartons bearing additional Eaton Marks.

28.    Eaton has continuously and exclusively used the Eaton Marks, including those listed above, in association with superior quality circuit breakers in the United States. Eaton's circuit breakers are widely recognized and exclusively associated by the relevant consuming public and trade as being high-quality products which consistently meet the required regulatory standards, as verified by independent third parties. The widespread fame in the industry, outstanding reputation, and significant goodwill associated with Eaton's Marks are invaluable assets to Eaton.

29.    The breakers at issue in this case are Molded Case Circuit Breakers ("MCCBs") and Miniature circuit breakers ("MCBs"). MCCBs are large breakers used in industrial settings, designed to handle larger currents and voltages than the circuit breakers most people see in residential installations. MCBs are (physically) smaller circuit breakers used both in commercial and residential settings.

30.    Eaton invests substantial time, energy and capital in ensuring its products comply with specific engineering and safety standards. In general, the NEMA / UL / CSA standards apply to breakers sold in North America, while the IEC standard applies to breakers sold in other parts of the world. Breakers manufactured under one standard are not interchangeable with a breaker manufactured under the other standard.

31.    Genuine breakers manufactured by Eaton incorporate serial numbers, date codes and product rating information.

11

32.     The front panel of genuine Eaton MCCB's contain two adhesive labels referred to as "nameplates." The nameplate includes the Eaton trademark and may also include the Cutler-Hammer trademark. Beneath the trademarks, the product family designation appears. Below that is a clear window which allows technical and commercial information, such as the style number and catalog number, printed on a separate label beneath the top nameplate, to show through. The second nameplate, typically on the right side of the breaker, includes a space where a small square certification label is applied if the breaker is manufactured to the NEMA / UL and CSA standards. This certification label is where the UL and CSA certification marks appear. These marks are not present when the breaker is manufactured to the IEC standard.



33.     The serial numbers found on genuine Eaton breakers are applied at the factory. The serial number on a genuine Eaton breaker allows Eaton to identify the date of manufacture, the location where the breaker was manufactured, and the specific physical configuration of the

breaker. The serial number also enables Eaton to track down any quality control problems and allows Eaton to continuously monitor the quality of its breakers. The serial numbers present on Eaton breakers also support Eaton's warranty process.



34.    Genuine MCBs have Eaton trademarks molded into the breaker itself, and typically also include additional stickers. These stickers may include a UL / CSA certification label on the front of the breaker, as well as a product label on the side of the breaker. Eaton has detected

suspected counterfeit BAB-type and QBHW-type MCB's. For the BAB-type MCB's, the counterfeit breakers include evidence of alteration, such as changing a 50-amp breaker to a 40-amp breaker. For the QBHW-type MCB's, one indicia of counterfeiting is that the labels on the breakers are not the correct color. Other genuine MCB's include QR codes and serial numbers for the purpose of authenticating these breakers. In addition to selling counterfeit breakers, Defendants are also selling breakers which are otherwise genuine but have these markings removed.

35.     Testing of these breakers reveals they do not perform as genuine Eaton breakers are expected to perform, demonstrating they were not manufactured by Eaton.

### Defendants' Unlawful Conduct

36.     Eaton has gradually discovered that Defendants are increasingly undermining Eaton's trademarks by purchasing and unlawfully selling, offering for sale, and/or distributing Eaton products in an unauthorized manner, including by selling counterfeit circuit breakers and by selling circuit breakers that bear counterfeit imitations of the Eaton Marks (the "Counterfeit Marks").

37.     Specifically, Eaton has identified circuit breakers that appear to have been manufactured by Eaton, but which have been relabeled to present them as a different breaker. In the act of relabeling, the infringers remove genuine labels bearing genuine Eaton trademarks, and apply counterfeit labels bearing counterfeit Eaton trademarks. The infringers also often sand off serial numbers and other product information from these breakers. Where this information has been applied to the breaker using laser marking, the infringers appear to remove these laser markings through sanding or some other abrasive processes (and in some cases, apply their own fraudulent laser markings).

38.    Moreover, Defendants are altering critical technical information, such as the voltage and current ratings of the breakers. Thus, not only are Defendants counterfeiting Eaton's trademarks, but they are also making false representations to their customers as to the technical ratings of the breakers they are selling. For example, Defendants may be selling breakers manufactured according to the IEC standard which have been relabeled with *different* current and voltage ratings, and then selling them to customers. As a result, Defendants' unsuspecting customers may receive what they believe to be a 30 amp breaker when in fact it is a 50 amp breaker. Yet other counterfeit breakers sold by Defendants are "frankenbreakers," which are breakers which are cobbled together from parts from other breakers, resulting in a breaker which may contain parts that were at one time part of a genuine Eaton breaker, but the breaker itself was never manufactured by Eaton. Still other breakers sold by Defendants appear to be made entirely of components not manufactured by Eaton.

39.    As set forth in greater detail in the declarations filed with this Complaint, breakers bearing counterfeit labels from Defendants have been discovered throughout the United States already installed or ready to be installed into facilities which support key electrical infrastructure, including nuclear power plants.

40.    As set forth in greater detail in the declarations filed herewith, Eaton has conducted test purchases from each of Defendants (excluding Global Breakers and Industrial Depot who have been identified as direct suppliers of counterfeit Eaton breakers through discovery), within the last several months, and determined the breakers received from each of Defendants was counterfeit:

    a.    Circuit breakers purchased from Defendant Breakers Unlimited (i) were shipped in cartons bearing counterfeit Eaton carton labels; (ii) have serial numbers and other markings abrasively removed from the side of the breaker; (iii) include a packet of metric screws, evidencing that the original breaker was actually manufactured to the IEC standard, and not the NEMA standard; and (iv) include counterfeit nameplates. Breakers Unlimited has now provided discovery indicating the

counterfeit circuit breakers in their possession came from Industrial Depot and Global Breakers.

b.  Circuit breakers purchased from Defendant Silicon Valley Breaker and Control (i) bore counterfeit nameplates; (ii) bore counterfeit nameplates; and (iv) have laser markings abrasively removed.

c.  A circuit breaker purchased from Defendant Bay Power (i) bore counterfeit nameplates; and (ii) include indications that the circuit breaker was manufactured to the IEC standard and not the UL/NEMA standard.

d.  Circuit breakers purchased from Defendant Anybreakers (distributed by defendant All Industrial Supply and shipped from Defendant Absolute Electric Supply) (i) were packaged in cartons bearing fake Eaton carton labels; (ii) bore counterfeit nameplates; and (iii) have laser markings abrasively removed.

41.  The sale of these breakers results in irreparable harm to Eaton in terms of infringement, interference with Eaton's contractual relationships with authorized sellers, and depletes the goodwill associated with the Eaton Marks.

42.  Additionally, Eaton also identified counterfeit and altered MCBs sold by Defendants. These MCBs have labeling that is inconsistent with Eaton's manufacturing specifications, including labels which are a different color than those found on genuine Eaton MCBs. Yet other of these MCBs appear to be otherwise genuine labels, but have had QR codes and other markings removed.

43.  Prior to selling, offering for sale, and/or distributing products bearing the Counterfeit Marks, Defendants were aware of the vast goodwill represented and symbolized in the Eaton Marks, and of the public recognition and reliance upon the Eaton Marks as identifying authentic products manufactured and sold by Eaton. Notwithstanding such knowledge, Defendants misappropriated the Eaton Marks.

44.  While the products at issue in this case are counterfeit, in that Defendants have altered Eaton's trademarks on both products and product packaging, Defendants are also

16

modifying non-trademark information on these breakers, such as product voltage and current ratings, which renders the breakers materially different from genuine, authorized Eaton breakers.

**Defendants' Willfulness**

45.    Each of Defendants is acting intentionally and willfully. To the extent each Defendant is not altering the markings and labels of these breakers itself, each of Defendants is well aware of how to identify breakers bearing counterfeit labels. Eaton has repeatedly warned the industry at large that purchasing breakers in the secondary marketplace carries a high risk of obtaining breakers bearing counterfeit labels. Despite this risk, each of Defendants purchase substantial amounts of breakers from sellers who are not authorized Eaton resellers.

46.    Further, Defendants do not take steps to inspect the breakers they obtain in the secondary marketplace for authenticity, despite knowing that obtaining breakers this way all but guarantees they will receive counterfeit breakers or breakers bearing counterfeit labels. On information and belief, at least some of Defendants are obtaining breakers from foreign suppliers, knowing that obtaining genuine breakers through these channels is highly unlikely. On further information and belief, there is no legitimate purpose for importing the quantities of IEC breakers that Defendants are importing other than to relabel them with counterfeit labels.

47.    Still further, several of Defendants have received explicit warnings regarding breakers bearing counterfeit labels directly from Eaton.

48.    Rather than cease their unlawful conduct, Defendants persisted and even expanded their efforts to acquire goods in the secondary marketplace, all while failing to take steps to inspect the products they were receiving (at best), and with intent to falsely relabel the breakers (at worst). In so doing, Defendants demonstrate that their conduct is willful and intentional. Defendants could easily obtain genuine breakers from authorized Eaton resellers. Instead, each of Defendants

17

knowingly and deliberately purchases breakers from unauthorized sources offering cheaper products, in order to maximize profits, despite each of Defendants' knowledge that these cheaper products are not genuine.

49.     Defendants are offering for sale and selling products bearing the Counterfeit Marks, with the intent to confuse and mislead the public into believing that Defendants' products are genuine Eaton products or have been sponsored or approved by Eaton.

50.     Defendants' products bearing the Counterfeit Marks trade off, and benefit from, the goodwill of the Eaton Marks.

**Adverse Effects to Eaton Stemming From Defendants' Unlawful Conduct**

51.     Plaintiff has been, and continues to be, damaged Defendants' wrongful use of the Eaton Marks. Among other things, the purchasing public is likely to be induced into purchasing Defendants' goods in the erroneous belief that they are genuine Eaton branded goods, which they are not.

52.     Defendants have profited from their wrongful conduct by selling circuit breakers to persons in the United States who otherwise would have bought genuine Eaton branded circuit breakers.

53.     Defendants' breakers bearing counterfeit labels are not subject to any known quality control standards, and Plaintiff has no control over the nature and quality of Defendants' breakers bearing counterfeit labels.

54.     Defendants' breakers bearing counterfeit labels explicitly misrepresent the breaker type, model number, and electrical ratings to customers.

55.     Defendants' continued sale of unauthorized Eaton products hinders Eaton's ability to track genuine products, thereby potentially endangering the public by preventing Eaton from resolving quality or compatibility problems and recalling defective products.

56.     Defendants' marketing and sale of products bearing the Counterfeit Marks improperly and unlawfully deprives Plaintiff of its absolute right to control the quality and relative safety of the products that appear to be sold under the Eaton Marks.

57.     Due to the nature and uses of the products at issue, which are used in critical infrastructure and other sensitive equipment, Defendants' sale of counterfeit product poses a serious risk to public health and safety. By causing a likelihood of confusion, mistake, deception, and potential public health risk, Defendants are inflicting irreparable harm to the public health and welfare.

58.     Further, Eaton has suffered, and unless Defendants' conduct is enjoined by this Court, will continue to suffer, actual economic damages, in the form of lost sales, revenues, and profits, and irreparable harm to Eaton's brand value, reputation, and goodwill, for which Eaton has no adequate legal remedy.

## COUNT I

### FEDERAL TRADEMARK INFRINGEMENT AND COUNTERFEITING
### (15 U.S.C. §§ 1114(1), 1116(d))

59.     Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

60.     The Eaton Marks are associated in the minds of the public and consumers with Eaton.

61.     Defendants are using marks that are identical to or indistinguishable from genuine Eaton Marks on circuit breakers without Eaton' approval, authorization, or consent.

19

62. Defendants' use of the Counterfeit Marks is likely to cause confusion in the minds of the public, leading the public to falsely believe that circuit breakers being sold, offered for sale and/or distributed by Defendants emanate or originate from Eaton and/or that Eaton has approved, sponsored, or otherwise associated itself with the circuit breakers being sold, offered for sale and/or distributed by Defendants.

63. Defendants' sale and distribution of breakers bearing counterfeit labels directly misleads consumers into believing the breaker is a specific model number or rating labeled as such by Eaton, when in fact it is a breaker of a different model number or rating bearing a counterfeit label applied by Defendants or their supplier(s).

64. To the extent Defendants' have sold breakers bearing genuine labels but Defendants have altered or removed only the product technical information, serial numbers and ratings, these breakers are materially different from genuine Eaton breakers and as a result also infringe Eaton's trademark rights.

65. Defendants' use of the Counterfeit Marks without Plaintiff's authorization or consent is a willful and intentional infringement of the Eaton Marks.

66. Defendants' conduct is intended to exploit Eaton's goodwill and reputation associated with the Eaton Marks and to take a competitive advantage without expenditure of resources.

67. Plaintiff has no control over the quality of the breakers bearing counterfeit labels distributed, marketed and/or sold by Defendants, and has no control over Defendants' or their suppliers(s) relabeling of breakers with false model numbers and ratings. Because of the likelihood of confusion as to the source of Defendants' products, Plaintiff's valuable goodwill in its trademarks is at the mercy of, and being harmed by, Defendants.

68.    Defendants' aforesaid acts have caused and, unless such acts are restrained by this Court, will continue to cause substantial and irreparable injury to Plaintiff.

69.    Plaintiff has no adequate remedy at law.

70.    As a result of Defendants' actions, Plaintiff has suffered, and will continue to suffer, money damages in an amount to be proven at trial.

## COUNT II

### UNFAIR COMPETITION AND FALSE DESIGNATIONS OF ORIGIN AND FALSE AND MISLEADING REPRESENTATIONS (15 U.S.C. §1125(a))

71.    Plaintiff repeats and realleges the preceding paragraphs as if set forth herein.

72.    Defendants' distribution of breakers bearing counterfeit labels and breakers bearing false and/or altered technical information constitutes unfair competition and a false designation of origin or false or misleading description or representation of fact, which is likely to deceive customers and prospective customers into believing that Defendants' circuit breakers are associated with or sponsored by Plaintiff, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

73.    Defendants are aware that they are selling breakers bearing counterfeit labels and/or breakers bearing false and/or altered technical information, by virtue of the fact that Defendants know the breakers they are purchasing are cheaper than genuine breakers which can be purchased from authorized resellers, the fact that the abrasive removal of technical information on Defendants' products is readily visible, the fact that the nameplates on Defendants' products are visibly counterfeit (in that they do not match nameplates on genuine Eaton products), the fact that Defendants' products often come in cartons with counterfeit carton labels which are clearly missing the Eaton watermark, among other facts readily known and apparent to each of

Defendants. Defendants intentionally purchase and sell these breakers despite this knowledge, intentionally creating consumer confusion and traffic off of the reputation and goodwill associated with the Eaton Marks.

74.     Plaintiff has no control over the quality of the circuit breakers sold by Defendants. Because of the likelihood of confusion as to the source of Defendants' products, Plaintiff's valuable goodwill in its trademarks is at the mercy of, and being harmed by, Defendants.

75.     Defendants' aforesaid acts have caused and, unless such acts are restrained by this Court, will continue to cause substantial and irreparable injury to Plaintiff. Among other things, Defendants' actions have caused and are continuing to cause monetary harm (through lost sales) as well as harm to Plaintiff's brand, goodwill, and reputation.

76.     Plaintiff has no adequate remedy at law.

77.     As a result of Defendants' actions, Plaintiff has suffered, and will continue to suffer, money damages in an amount to be proven at trial.

## COUNT III

## COMMON LAW UNFAIR COMPETITION

78.     Plaintiff repeats and realleges the preceding paragraphs as if set forth herein.

79.     Defendants have unfairly and intentionally used the Eaton Marks to misrepresent their circuit breakers as originating from or having the sponsorship, affiliation, or approval of Plaintiff.

80.     Defendants have engaged in such unfair and improper conduct to trade off of, and benefit from, Eaton's reputation and goodwill in its Eaton Marks.

81.     Defendants have derived, and continue to derive, unfair and illicit profits by trading off of the reputation and goodwill of the Eaton Marks.

82.     Through their use of the Counterfeit Marks, Defendants have unfairly caused prospective and actual customers of genuine Eaton products to instead purchase Defendants' counterfeit products. As a result, Plaintiff has lost sales and profits. Defendants have also harmed Plaintiff's brand, goodwill, and reputation.

83.     The acts described above, constitute unfair competition under this State's common law.

84.     Defendants' aforesaid acts have caused and, unless such acts are restrained by this Court, will continue to cause substantial and irreparable injury to Plaintiff.

85.     Plaintiff has no adequate remedy at law.

86.     Defendants' conduct is oppressive, fraudulent, and malicious, entitling Plaintiff to an award of punitive damages. Indeed, as noted above, Defendants continue to sell products bearing the Counterfeit Mark even after Plaintiff sent Defendants cease-and-desist letters that clearly put Defendants on notice that they were selling counterfeit products.

## COUNT IV

## UNJUST ENRICHMENT

87.     Plaintiff repeats and realleges the preceding paragraphs as if set forth herein.

88.     Plaintiff has invested substantial time, resources, and money developing, growing, and promoting the Eaton Marks and the goodwill and reputation associated therewith.

89.     Defendants have unfairly and intentionally used the Eaton Marks to misrepresent their circuit breakers as originating from or having the sponsorship, affiliation, or approval of Plaintiff.

90.     Defendants have engaged in such unfair and improper conduct in order to trade off of, and benefit from, the reputation and goodwill in the Eaton Marks.

91.      Defendants have derived, and continue to derive, benefit from Plaintiff through their activities, including legitimacy for their products and the goodwill of the Eaton Marks. Defendants also have derived, and continue to derive, unfair and illicit profits by trading off of the reputation and goodwill of the Eaton Marks.

92.      By being able to trade off of, and profit from, the Eaton Marks and the goodwill and reputation associated therewith, Defendants have been unjustly enriched.

93.      It would be unjust for Defendants to be permitted to retain the illicit profits they earned through their sale of products bearing the Counterfeit Marks.

94.      The acts described above constitute unjust enrichment under this State's common law.

95.      Defendants' aforesaid acts have caused and, unless such acts are restrained by this Court, will continue to cause substantial and irreparable injury to Plaintiff.

96.      Plaintiff has no adequate remedy at law.

**COUNT V**

**COMMON LAW CONSPIRACY**

97.      Plaintiff repeats and realleges the preceding paragraphs as if set forth herein.

98.      Defendants are actively conspiring with each other to misappropriate Eaton's intellectual property, to create a network of sellers and distributors of circuit breakers bearing Counterfeit Marks in furtherance of their efforts to misappropriate Eaton's intellectual property, and to defraud Eaton's (and Defendants') customers.

99.      One component of Defendants' conspiracy is creating a marketplace for otherwise genuine breakers which have serial numbers and other critical markings removed. Eaton has long warned the industry, and many of the Defendants specifically, that if they traffic in breakers with serial numbers removed, they will inevitably end up purchasing and selling counterfeit breakers.

Defendants have not only ignored these warnings, but have continued to, and even expanded their trafficking in breakers with serial numbers removed. Defendants actively encourage this activity by being ready and willing buyers of breakers with serial numbers removed, by actively seeking out suppliers who sell such breakers and, on information and belief, by encouraging suppliers to provide such products.

100.    Despite knowing that trafficking in breakers with missing serial numbers creates a marketplace for counterfeit goods, on information and belief, Defendants have taken no steps, or have taken inadequate steps, to prevent the purchase and sale of counterfeit breakers, as demonstrated by each Defendants' sale of counterfeit breakers.

101.    Defendants also buy and sell breakers and breakers bearing counterfeit marks from and to each other, and to and from a network of sellers of breakers bearing counterfeit marks. All Defendants—excluding Industrial Depot and Global Breakers who have been explicitly identified by Defendants as their source of counterfeit products—have admitted to buying and selling from one another. In addition, at least some of Defendants appear to obtain their breakers bearing counterfeit marks from a common source.

102.    Defendant SVBC actively seeks out suppliers of cheap breakers without taking steps to determine whether the breakers are genuine. These suppliers include other Defendants in this case, as well as eBay (a marketplace notorious for the presence of counterfeit goods). SVBC also directly manufactures its own counterfeit products by collecting parts of once-genuine breakers, stripping off labels and other markings, and replacing those labels with ones printed by SVBC itself. The labels printed by SVBC include Eaton trademarks, even though SVBC has no authorization to make any use of Eaton trademarks and knows it has no authorization to do so. Further, SVBC is well known in the industry, and to the other Defendants, to engage in this

behavior, yet other defendants readily purchase breakers from SVBC, and SVBC readily sells these breakers to the other defendants.

103.    Defendant Breakers Unlimited actively seeks out suppliers of breakers with missing serial numbers. As a result, Breakers Unlimited purchases breakers from the other defendants in this case without taking steps to determine whether the products they are purchasing are genuine, even though Breakers Unlimited knows that breakers missing serial numbers are likely to include counterfeit breakers. On information and belief, Breakers Unlimited is well aware of other defendants' reputation for selling counterfeit breakers.

104.    Breakers Unlimited also actively seeks out used breakers which it knows to have been relabeled, including at least one breaker which bore a label with Eaton's "Series C" trademark, but which also stated it was not the "manufactures" [sic] label.

105.    At least Defendants Any Breakers, All Industrial and Absolute Electric share common ownership and control and were created by Mr. Vaysberg and Mr. Felstman in order to further the distribution and sale of breakers bearing counterfeit labels while attempting to limit and distribute liability for the sale of these goods.

106.    On information and belief, at least Any Breakers, All Industrial and Absolute Electric have traded counterfeit breakers amongst each other and sold them to unsuspecting customers.

107.    The similarity of Defendants' counterfeit products—with several Defendants selling *the exact same* style of breakers bearing counterfeit labels, suggests a common plan for creating breakers bearing counterfeit labels, a shared source for breakers bearing counterfeit labels, or both.

108. Defendants have built an industry where they are openly trading Eaton-branded circuit breakers that are missing serial numbers, which in and of itself creates the marketplace for counterfeit goods to be sold and distributed as verifying legitimate Eaton-branded products becomes increasingly difficult for the average consumer.

109. Further, Eaton has discovered counterfeit Eaton circuit breakers bearing a "grocery sticker," which Eaton has come to associate with Anybreakers, that were sold to customers by at least two named defendants: Bay Power and SVBC. Investigation is ongoing as to what other Defendants are/were in possession of counterfeit Eaton circuit breakers that bear the orange grocery sticker associated with Anybreakers, suggesting a common source of counterfeit products.

110. Defendants knowingly participate with each other, and with others, in creating a network of sellers of breakers bearing counterfeit marks, for the purpose of enriching themselves at Eaton's expense.

111. Further, Defendants are sophisticated business entities that are aware that they are obtaining breakers at a price that is suspicious.

112. Defendants entered into this conspiracy knowingly and willfully.

113. By reason and as a direct result of these acts of counterfeiting by Defendants, Eaton has suffered great and irreparable damages, in an amount to be proved at trial. The direct and proximate damage to Eaton includes, but is not limited to, damage to Eaton's intellectual property, damage to Eaton's goodwill and reputation, damage to Eaton's relationship with customers who have been defrauded by Defendants, and expenses incurred by Eaton replacing circuit breakers and alerting customers of counterfeits sold by Defendants.

**WHEREFORE,** Plaintiff prays for judgment against Defendants as follows:

1.  That Defendants and their agents, servants, employees, attorneys, successors, and assigns, and any and all persons acting in concert or participating with them, or any of their successors or assigns, be preliminarily and permanently enjoined and restrained from directly or indirectly:

    a.  using the Eaton Marks, or any reproduction, counterfeit, copy, or colorable imitation of said marks, in connection with the importation, sale, offer for sale, or distribution of circuit breakers that are not genuine Eaton circuit breakers;

    b.  using the Eaton Marks, or any reproduction, counterfeit, copy, or colorable imitation of the same, in any manner likely to cause others to believe that Defendants' products are connected with Plaintiff or are genuine Eaton branded products;

    c.  passing off, inducing, or enabling others to sell or pass off any merchandise which is not genuine Eaton branded merchandise as genuine Eaton branded products;

    d.  making any false or misleading statements regarding Plaintiff or their goods, or the relationship between Plaintiff and Defendants;

    e.  committing any other acts calculated to cause purchasers to believe that Defendants' products are genuine Eaton branded products, or that Defendants' products are specific Eaton products when they are not;

    f.  shipping, delivering, holding for sale, importing, distributing, returning, transferring, or otherwise moving or disposing of in any manner such circuit breakers or packaging falsely bearing one or more of the Eaton Marks or any reproduction, counterfeit, copy, or colorable imitation of the same; and

g.  assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in the above subparagraphs (a) through (f).

2. That Defendants and any and all persons controlled by or acting in concert with Defendants be required to deliver to Plaintiff for destruction all goods, packages, and any other written or printed materials that bear or depict the Eaton Marks, or any reproduction, counterfeit, copy, or colorable imitation of the same, or anything other than genuine Eaton branded products or circuit breakers, or that are otherwise in violation of this Court's order issued pursuant hereto, and all means for making the same.

3. That Defendants be required to account to Plaintiff for Defendants' profits from the sale of infringing circuit breakers and for such sum in addition thereto as the Court shall find just.

4. That this case be found exceptional, and Plaintiff awarded its attorneys' fees pursuant to 15 U.S.C. § 1117(a).

5. That Plaintiff recover the damages arising out of Defendants' wrongful acts in a sum equal to three times the actual damages suffered by Plaintiff, as provided in 15 U.S.C. § 1117(b).

6. That Plaintiff be awarded statutory damages in lieu of actual damages, as provided in 15 U.S.C. § 1117(c).

7. That Defendants be required to disgorge its profits and other ill-gotten gains.

8. That Plaintiff recover taxable costs of this action, including reasonable attorney's fees and interest.

9. That Plaintiff be awarded punitive damages in view of Defendants' wanton and deliberate illegal acts committed with oppression, fraud, or malice.

10. That Defendants be ordered to file with the Court and serve upon Plaintiff, within thirty (30) days after the service of the injunction upon Defendant, a report in writing under oath setting forth in detail the manner and form in which Defendant has complied with the injunction and judgment entered pursuant to this Complaint.

11. That Plaintiff be awarded such other and further relief as this Court deems just and proper.

## **<u>DEMAND FOR JURY TRIAL</u>**

Plaintiff hereby demands a trial by jury of all triable issues raised by this Complaint.

Respectfully submitted,

Dated: May 16, 2025

By:    _/s/ Cameron Nelson_____

Riley H. Floyd
HOOVER HULL TURNER LLP
111 Monument Circle, Suite 4400
Indianapolis, IN 46204
Telephone: (317) 381-5615
Email: rfloyd@hooverhullturner.com

Cameron M. Nelson *Pro Hac Vice*
Jacqueline V. Brousseau *Pro Hac Vice*
Katherine M. Cronin *Pro Hac Vice*
Blake H. Altman
GREENBERG TRAURIG, LLP
360 N. Green St., Suite 1300
Chicago, IL 60607
Telephone: (312) 456-8400
nelsonc@gtlaw.com
jacqueline.brousseau@gtlaw.com
cronink@gtlaw.com
blake.altman@gtlaw.com

*Attorneys for Plaintiff Eaton Corporation*

# Exhibit B

| From: | Marsh, Robyn E. |
|---|---|
| To: | Palnitkar, Bina (Shld-Dal-LT); joshua.simmons@kirkland.com; Altman, Blake (Assoc-CHI-LT); terry.henry@blankrome.com; Nelson, Cameron (Shld-Chi-IP-Tech) |
| Cc: | aahmed@infinitylawca.com; timothy.pecsenye@blankrome.com; Asia.Livingstone@BlankRome.com; Daniel.Saeedi@BlankRome.com; Timothy.Miller@BlankRome.com; jason.rauch@faegredrinker.com; justin.taylor@kirkland.com; michael.cockson@faegredrinker.com; jeff.johnson@faegredrinker.com; Lazar, Bart; rfloyd@hooverhullturner.com; arafigi@infinitylawca.com; Amanda.Gallagher@btlaw.com; jtlarson@btlaw.com; anybreakers-eaton@kirkland.com; Eaton vs Breakers Unlimited; Johnston, Alyssa O. (Assoc-DAL-LT); louis.perry@faegredrinker.com |
| Subject: | RE: Eaton v. Breakers Unlimited: Amended Complaint |
| Date: | Friday, May 2, 2025 3:31:42 PM |
| Attachments: | image001.png image002.png |

Counsel,

While you say you will "note" our objection, we expect you to do so accurately and not misrepresent what any of us say as you have in past filings with the court, and do in your email below. It's not a "non-objection" and you are entirely incorrect in your position that they are "two separate" issues.

Further, given that Eaton will be moving to add new parties and presumably proceed with discovery as to these new foreign entities, and given that Eaton has failed to meaningfully participate in discovery to date, the notion that you are prepared or even serious about seeking a TRO (expired for two months) let alone a preliminary injunction is dubious, at best.  To be clear, if Eaton moves to amend (and fails to accurately represent party positions), OTC and CPI **will not** be offering dates for depositions of its witnesses any time soon, because we will not be offering our witnesses more than once in this lawsuit.  Depriving new defendants of an opportunity to participate in discovery and drive up costs and fees for all defendants may be your plan, but it is not well-taken and we will not cater to such conduct.

OTC and CPI reserve all rights and remedies.

Robyn


 Book time to meet with me


**Robyn E. Marsh** | Partner | Seyfarth Shaw LLP
233 S. Wacker Drive | Suite 8000 | Chicago, Illinois 60606-6448
Direct: +1-312-460-5308 | Fax: +1-312-460-7308
RMarsh@seyfarth.com | www.seyfarth.com

CONFIDENTIALITY WARNING:  This email may contain privileged or confidential information and is for the sole use of the intended recipient(s).  Any unauthorized use or disclosure of this communication is prohibited.  If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

**From:** palnitkarb@gtlaw.com <palnitkarb@gtlaw.com>
**Sent:** Friday, May 2, 2025 3:22 PM
**To:** joshua.simmons@kirkland.com; Blake.Altman@gtlaw.com; terry.henry@blankrome.com; NelsonC@gtlaw.com
**Cc:** aahmed@infinitylawca.com; timothy.pecsenye@blankrome.com; Asia.Livingstone@BlankRome.com; Daniel.Saeedi@BlankRome.com; Timothy.Miller@BlankRome.com; jason.rauch@faegredrinker.com; justin.taylor@kirkland.com; michael.cockson@faegredrinker.com; jeff.johnson@faegredrinker.com; Lazar, Bart <BLazar@seyfarth.com>; rfloyd@hooverhullturner.com; arafiqi@infinitylawca.com; Amanda.Gallagher@btlaw.com; jtlarson@btlaw.com; anybreakers-eaton@kirkland.com; EatonvsBreakersUnlimited@gtlaw.com; johnstona@gtlaw.com; Marsh, Robyn E. <RMarsh@seyfarth.com>; louis.perry@faegredrinker.com
**Subject:** RE: Eaton v. Breakers Unlimited: Amended Complaint

Hi Josh,

Thank you for your position. However, Eaton will not agree to no longer seek a preliminary injunction in exchange for the parties' non-objection to its amended complaint. As we stated, these are two separate issues. Eaton moved for an expedited PI hearing to be set 90 days after the TRO motion. Since then, both Eaton and Defendants have conferred in good-faith on the TRO language to move forward reasonably.

With respect to the amended complaint, it does not change the scope of the case to anything Defendants have not already been made aware of. Factually, it clarifies the circuit breakers at issue, including the Mini Circuit Breakers, which Defendants have known Eaton's position on the products at issue since its inception. Further, the amended complaint clarifies allegations that were already discussed in the Grace declaration, and which Eaton has learned through its discovery and inspections since initiating the case. This is not a new legal theory. Further, since inception, Eaton has stated that Defendants have been in the sale of both counterfeit and infringing products. The scale of what is counterfeit versus infringing has changed in light of new information in the discovery process, but again, no new legal theories are being presented.

Lastly, we disagree that the amended complaint stands to prejudice Defendants in any way. Adding additional parties has no impact on the defenses of each individual Defendant as far as the PI/TRO goes. Further, to the extent prejudice exists in adding the defendants, that is a burden to Eaton, to have to prepare 2 additional defendants for a hearing.

We are happy to note your objections and the basis for them in our motion for leave, but Eaton will not agree to exchange your non-objection for Eaton's non-prosecution of the preliminary injunction.

Thank you,

**Bina Palnitkar**
Shareholder

Greenberg Traurig, LLP

2200 Ross Avenue | Suite 5200 | Dallas, TX 75201
T +1 214.665.3727 | F +1 214.665.5947
palnitkarb@gtlaw.com | www.gtlaw.com [gtlaw.com] | View GT Biography [gtlaw.com]

 GreenbergTraurig

---

**From:** Simmons, Joshua L. <joshua.simmons@kirkland.com>
**Sent:** Thursday, May 1, 2025 7:47 PM
**To:** Altman, Blake (Assoc-CHI-LT) <Blake.Altman@gtlaw.com>; *terry.henry@blankrome.com <terry.henry@blankrome.com>; Nelson, Cameron (Shld-Chi-IP-Tech) <NelsonC@gtlaw.com>
**Cc:** aahmed@infinitylawca.com; timothy.pecsenye@blankrome.com; Asia.Livingstone@BlankRome.com; Daniel.Saeedi@BlankRome.com; Timothy.Miller@BlankRome.com; jason.rauch@faegredrinker.com; Taylor, Justin <justin.taylor@kirkland.com>; michael.cockson@faegredrinker.com; jeff.johnson@faegredrinker.com; BLazar@seyfarth.com; rfloyd@hooverhullturner.com; arafiqi@infinitylawca.com; Amanda.Gallagher@btlaw.com; jtlarson@btlaw.com; #Any Breakers-Eaton <anybreakers-eaton@kirkland.com>; Eaton vs Breakers Unlimited <EatonvsBreakersUnlimited@gtlaw.com>; Johnston, Alyssa O. (Assoc-DAL-LT) <johnstona@gtlaw.com>; RMarsh@seyfarth.com; louis.perry@faegredrinker.com
**Subject:** RE: Eaton v. Breakers Unlimited: Amended Complaint

Blake,

They aren't two separate issues because (a) despite keeping the legal claims the same, the factual allegations are attempting to change the scope of the case; and (b) part of the question of whether the Court will grant leave, is the prejudice that amending at this late juncture will cause to the defendants, which changing the scope of the case in the middle of what was supposed to be a TRO or a PI certainly does. If Eaton confirms that it is no longer seeking preliminary injunctive relief, I think I could get Any Breakers on board with consenting to the amendment, but I was hoping that Eaton would be more forthcoming with its plan so that we can properly analyze the issues. Any chance that Eaton will do that for us?

Josh

---

**Joshua L. Simmons**

------------------------------------------------
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue, New York, NY 10022
**T** +1 212 446 4989
**F** +1 212 446 4900
------------------------------------------------
He/Him/His
joshua.simmons@kirkland.com
http://www.kirkland.com/jsimmons

**From:** Blake.Altman@gtlaw.com <Blake.Altman@gtlaw.com>
**Sent:** Thursday, May 1, 2025 7:21 PM
**To:** *terry.henry@blankrome.com <terry.henry@blankrome.com>; NelsonC@gtlaw.com
**Cc:** aahmed@infinitylawca.com; timothy.pecsenye@blankrome.com;
Asia.Livingstone@BlankRome.com; Daniel.Saeedi@BlankRome.com;
Timothy.Miller@BlankRome.com; jason.rauch@faegredrinker.com; Taylor, Justin
<justin.taylor@kirkland.com>; michael.cockson@faegredrinker.com;
jeff.johnson@faegredrinker.com; BLazar@seyfarth.com; rfloyd@hooverhullturner.com;
arafiqi@infinitylawca.com; Amanda.Gallagher@btlaw.com; jtlarson@btlaw.com; #Any Breakers-
Eaton <anybreakers-eaton@kirkland.com>; EatonvsBreakersUnlimited@gtlaw.com;
johnstona@gtlaw.com; RMarsh@seyfarth.com; louis.perry@faegredrinker.com
**Subject:** RE: Eaton v. Breakers Unlimited: Amended Complaint

Good evening counsel,

We are not ignoring your previous updates regarding the PI hearing and the case impacts. We will
respond to that accordingly. However, these are two separate issues, and we are treating them as
such. Eaton will be filing it's amended complaint to add in two additional parties that were identified
as sources of counterfeit products. Eaton also is amending its complaint with additional factual
allegations so the record is clear. Eaton is not adding new claims against any of the current
defendants.

We asked last week if there was an objection to the amended complaint and after defendants'
counsels requested time to review the complaint with their clients, we followed up again a week
later. While Eaton believes these are two separate issues—one addressing the amended complaint
as written, one with respect to the PI hearing—if counsel wants to base their objection on their
request for Eaton to withdraw its PI hearing, we will note this accordingly.

Thank you,


**Blake Altman**
Associate

Greenberg Traurig, LLP
77 West Wacker Drive | Suite 3100 | Chicago, IL 60601
T +1 312.476.5032  |  C +1 312.885.6092
Blake.Altman@gtlaw.com  |  www.gtlaw.com  |  View GT Biography

 GreenbergTraurig

**We're moving!**
**Our new address will be:**
Greenberg Traurig, LLP
360 North Green Street | Suite 1300 | Chicago, IL 60607
(Please note, our phone numbers and email addresses will remain the same)

**From:** Henry, Terry M. <terry.henry@blankrome.com>
**Sent:** Thursday, May 1, 2025 3:22 PM

**To:** Altman, Blake (Assoc-CHI-LT) <Blake.Altman@gtlaw.com>; Nelson, Cameron (Shld-Chi-IP-Tech) <NelsonC@gtlaw.com>
**Cc:** aahmed@infinitylawca.com; Pecsenye, Timothy <timothy.pecsenye@blankrome.com>; Livingstone, Asia <Asia.Livingstone@BlankRome.com>; Saeedi, Daniel R. <Daniel.Saeedi@BlankRome.com>; Miller, Timothy <Timothy.Miller@BlankRome.com>; jason.rauch@faegredrinker.com; justin.taylor@kirkland.com; michael.cockson@faegredrinker.com; jeff.johnson@faegredrinker.com; BLazar@seyfarth.com; rfloyd@hooverhullturner.com; arafiqi@infinitylawca.com; Amanda.Gallagher@btlaw.com; jtlarson@btlaw.com; anybreakers-eaton@kirkland.com; Eaton vs Breakers Unlimited <EatonvsBreakersUnlimited@gtlaw.com>; Johnston, Alyssa O. (Assoc-DAL-LT) <johnstona@gtlaw.com>; RMarsh@seyfarth.com; louis.perry@faegredrinker.com
**Subject:** RE: Eaton v. Breakers Unlimited: Amended Complaint

Hi Blake

We are waiting on a response to Breakers Unlimited's request that Eaton cease its efforts to expedite these proceedings and withdraw its request for a preliminary injunction.


**Terry M. Henry** (he/him)| BLANK**ROME**
One Logan Square | 130 North 18th Street | Philadelphia, PA 19103
O: 215.569.5644 | M: 215.694.5136 | Terry.Henry@blankrome.com

---

**From:** Blake.Altman@gtlaw.com <Blake.Altman@gtlaw.com>
**Sent:** Thursday, May 1, 2025 2:23 PM
**To:** Henry, Terry M. <terry.henry@blankrome.com>; NelsonC@gtlaw.com
**Cc:** aahmed@infinitylawca.com; Pecsenye, Timothy <timothy.pecsenye@blankrome.com>; Livingstone, Asia <Asia.Livingstone@BlankRome.com>; Saeedi, Daniel R. <Daniel.Saeedi@BlankRome.com>; Miller, Timothy <Timothy.Miller@BlankRome.com>; jason.rauch@faegredrinker.com; justin.taylor@kirkland.com; michael.cockson@faegredrinker.com; jeff.johnson@faegredrinker.com; BLazar@seyfarth.com; rfloyd@hooverhullturner.com; arafiqi@infinitylawca.com; Amanda.Gallagher@btlaw.com; jtlarson@btlaw.com; anybreakers-eaton@kirkland.com; EatonvsBreakersUnlimited@gtlaw.com; johnstona@gtlaw.com; RMarsh@seyfarth.com; louis.perry@faegredrinker.com
**Subject:** RE: Eaton v. Breakers Unlimited: Amended Complaint

Good afternoon counsels,

Please let us know if your clients have an objection to Eaton's filing its Motion for Leave to file its Amended Complaint. We need to get the amended complaint on file and will note your objections or non-objections accordingly. However, can you please let us know your clients' positions so that we can get this on file.

Thank you,

**Blake Altman**
Associate

Greenberg Traurig, LLP
77 West Wacker Drive | Suite 3100 | Chicago, IL 60601
T +1 312.476.5032 | C +1 312.885.6092
Blake.Altman@gtlaw.com | www.gtlaw.com | View GT Biography



**From:** Henry, Terry M. <terry.henry@blankrome.com>
**Sent:** Friday, April 25, 2025 3:47 PM
**To:** Nelson, Cameron (Shld-Chi-IP-Tech) <NelsonC@gtlaw.com>
**Cc:** aahmed@infinitylawca.com; Pecsenye, Timothy <timothy.pecsenye@blankrome.com>; Livingstone, Asia <Asia.Livingstone@BlankRome.com>; Saeedi, Daniel R. <Daniel.Saeedi@BlankRome.com>; Miller, Timothy <Timothy.Miller@BlankRome.com>; jason.rauch@faegredrinker.com; justin.taylor@kirkland.com; michael.cockson@faegredrinker.com; jeff.johnson@faegredrinker.com; BLazar@seyfarth.com; rfloyd@hooverhullturner.com; arafiqi@infinitylawca.com; Amanda.Gallagher@btlaw.com; jtlarson@btlaw.com; anybreakers-eaton@kirkland.com; Eaton vs Breakers Unlimited <EatonvsBreakersUnlimited@gtlaw.com>; Johnston, Alyssa O. (Assoc-DAL-LT) <johnstona@gtlaw.com>; RMarsh@seyfarth.com; louis.perry@faegredrinker.com; Altman, Blake (Assoc-CHI-LT) <Blake.Altman@gtlaw.com>
**Subject:** RE: Eaton v. Breakers Unlimited: Amended Complaint

**\*EXTERNAL TO GT\***

Cam:

We do need to review this with our client. But as we discussed yesterday, we do not fundamentally have an issue with an amended complaint or adding these new additional defendants. Courts generally view pleading amendments liberally. But here, we do have an issue with Eaton's attempt to continue to expedite the proceedings under what can only be called difficult circumstances entirely within its control. Adding these new defendants will inherently delay the litigation and make scheduling much more difficult. Eaton must acknowledge we cannot find mutually convenient dates for depositions let alone a preliminary injunction hearing. On top of that, it appears that Eaton is shifting its theory of counterfeiting, which will further delay the proceedings.

Will Eaton consider withdrawing its request for a preliminary injunction until such time as the existing and newly added parties can complete all discovery in an orderly fashion.

**Terry M. Henry** (he/him)| BLANK**ROME**

One Logan Square | 130 North 18th Street | Philadelphia, PA 19103

O: 215.569.5644 | M: 215.694.5136 | Terry.Henry@blankrome.com

---

**From:** Blake.Altman@gtlaw.com <Blake.Altman@gtlaw.com>
**Sent:** Friday, April 25, 2025 2:04 PM
**To:** Henry, Terry M. <terry.henry@blankrome.com>; louis.perry@faegredrinker.com; RMarsh@seyfarth.com; justin.taylor@kirkland.com; arafiqi@infinitylawca.com
**Cc:** aahmed@infinitylawca.com; Pecsenye, Timothy <timothy.pecsenye@blankrome.com>; Livingstone, Asia <Asia.Livingstone@BlankRome.com>; Saeedi, Daniel R. <Daniel.Saeedi@BlankRome.com>; Miller, Timothy <Timothy.Miller@BlankRome.com>; jason.rauch@faegredrinker.com; michael.cockson@faegredrinker.com; jeff.johnson@faegredrinker.com; BLazar@seyfarth.com; rfloyd@hooverhullturner.com; Amanda.Gallagher@btlaw.com; jtlarson@btlaw.com; anybreakers-eaton@kirkland.com; EatonvsBreakersUnlimited@gtlaw.com; johnstona@gtlaw.com
**Subject:** Eaton v. Breakers Unlimited: Amended Complaint

Good afternoon counsel,

Eaton is planning on filing a motion for leave to file its amended complaint today. Attached is a redline of the amended complaint. Please let us know whether you have any objection to Eaton's request for leave.

Thank you,

**Blake Altman**
Associate

Greenberg Traurig, LLP
77 West Wacker Drive | Suite 3100 | Chicago, IL 60601
T +1 312.476.5032 | C +1 312.885.6092
Blake.Altman@gtlaw.com | www.gtlaw.com | View GT Biography



**We're moving!**
Our new address will be:
Greenberg Traurig, LLP
360 North Green Street | Suite 1300 | Chicago, IL 60607
(Please note, our phone numbers and email addresses will remain the same)

*****************************************************************************************************

This message and any attachments may contain confidential or privileged information and are only for the use of the intended recipient of this message. If you are not the intended recipient, please notify the Blank Rome LLP or Blank Rome Government Relations LLC sender by return email, and delete or destroy this and all copies of this message and all attachments. Any unauthorized disclosure, use, distribution, or reproduction of this message or any attachments is prohibited and may be unlawful.

*********************************************************************************************

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of the multi-national law firm Kirkland & Ellis LLP and/or its affiliated entities. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.